FILED : JS :
US DISTRICT COURT CLERK
WESTERN DISTRICT OF KY

20 DEC 15 PM 1:45

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **Sean Hammond** and **Nicholas Anderson**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Jack Rabbit Services, LLC**, a Kentucky Limited Liability Company;<br>**Jack Rabbit USA, LLC**, a Florida Limited Liability Company;<br>**David Hain**; and<br>**Theodore Kaufman**,<br><br>Defendants. | No. 3:20-CV-838-GNS<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiffs, Sean Hammond and Nicholas Anderson ("Plaintiffs"), sue the Defendants, Jack Rabbit Services, LLC; Jack Rabbit USA, LLC; David Hain; and Theodore Kaufman (collectively "Defendants") and allege as follows:

### PRELIMINARY STATEMENT

1.     This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.; Kentucky Revised Statutes ("KRS") §§ 337.050, 337.275, and 337.285; and Ohio Revised Code Ann. ("ORC") § 4111.0 for Defendants' failure to pay Plaintiff all earned minimum and overtime wages.

2.     The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark Best Freight Sys. Inc., 450 U.S. 728, 739 (1981).  Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks.  See 29 U.S.C. § 206(a).

-1-

Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek. See 29 U.S.C § 207.

3.      KRS §§ 337.050, 337.275, and 337.285 establish the law regarding minimum wage and overtime within the State of Kentucky.

4.      ORC § 4111 establishes the law regarding minimum wage and overtime within the State of Ohio.

5.      Plaintiffs bring this action on behalf of themselves and all similarly-situated current and former employees of Defendants who were roadside assistance technicians classified by Defendants as independent contractors.

6.      Plaintiffs, individually, and on behalf of all others similarly-situated, bring this action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

7.      Plaintiffs, individually, and on behalf of all others similarly-situated, bring this action against Defendants for their unlawful failure to pay minimum wage and overtime due and owing Plaintiff and others similarly-situated in violation of KRS §§ 337.050, 337.275, and 337.285.

8.      Plaintiffs, individually, and on behalf of all others similarly-situated, bring this action against Defendants for their unlawful failure to pay minimum wage and overtime due and owing Plaintiff and others similarly-situated in violation of ORC § 4111.

9.      Plaintiffs bring a collective action under the FLSA to recover the unpaid minimum wages and overtime owed to them individually and on behalf of all other similarly-situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

10.     Additionally, Defendants' failure to compensate Plaintiffs and all other similarly-situated employees at a rate equal to Kentucky's required minimum wage and overtime rates violates Kentucky Revised Statutes §§ 337.050, 337.275, and 337.285.  Plaintiffs, therefore, bring a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Kentucky wage laws.  Members of the Kentucky Rule 23 Class Action are referred to as the "Kentucky Class Action Members."

11.     Additionally, Defendants' failure to compensate Plaintiffs and all other similarly-situated employees at a rate equal to Ohio's required minimum wage and overtime rates violates Ohio Revised Statutes § 4111.  Plaintiffs, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages and other damages owed under Ohio wage laws.  Members of the Ohio Rule 23 Class Action are referred to as the "Ohio Class Action Members."

12.     The Collective Members are all current and former employees who worked as roadside assistance technicians for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

13.     The Kentucky Class Action Members are all current and former employees who worked as roadside assistance technicians for Defendants in the State of Kentucky and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

14.     The Ohio Class Action Members are all current and former employees who worked as roadside assistance technicians for Defendants in the State of Ohio and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

15.     Defendants own and operate roadside assistance companies that provide tire changing, jump starts, fuel delivery, and lockout services.

16.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiffs and all other similarly-situated employees as independent contractors.

17.     At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay a minimum wage; willfully refuse to pay overtime; and willfully reduced employee wages through unlawful deductions.

18.     In willfully refusing to pay a minimum wage; willfully refusing to pay overtime; and willfully reducing employee wages through unlawful deductions, Defendants have violated the minimum wage provisions of 29 U.S.C. § 206 and the overtime provisions of 29 U.S.C. § 207.

19.     In willfully refusing to pay a minimum wage; willfully refusing to pay overtime; and willfully reducing employee wages through unlawful deductions, Defendants have violated the minimum wage and overtime provisions of Kentucky Revised Statutes §§ 337.050, 337.275, and 337.285.

20.     In willfully refusing to pay a minimum wage; willfully refusing to pay overtime; and willfully reducing employee wages through unlawful deductions, Defendants have violated the minimum wage and overtime provisions of Ohio Revised Code Ann. § 4111.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.* because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the

state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

22.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiffs occurred within the Western District of Kentucky, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

23.    At all material times, Plaintiff Hammond is an individual residing in Kenton County, Kentucky, and is a former employee of Defendants.

24.    At all material times, Plaintiff Anderson is an individual residing in Jefferson County, Kentucky, and is a former employee of Defendants.

25.    At all material times, Defendant Jack Rabbit Services, LLC is a Kentucky limited liability company licensed to transact business in the State of Kentucky.  At all material times, Defendant Jack Rabbit Services, LLC does business, has offices, and/or maintains agents for the transaction of its customary business in Jefferson County, Kentucky.

26.    At all material times, Defendant Jack Rabbit Services, LLC is a limited liability company licensed to transact business in the State of Kentucky.  At all material times, Jack Rabbit Services, LLC does business, has offices, and/or maintains agents for the transaction of its customary business in Jefferson County, Kentucky.

27.    At all material times, Defendant Jack Rabbit Services, LLC does business as "Jack Rabbit Roadside Assistance."

28.     At all relevant times, Defendant Jack Rabbit Services, LLC was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant Jack Rabbit Services, LLC had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Jack Rabbit Services, LLC is subject to liability under the FLSA.

29.     On information and belief, at all material times, Defendant Jack Rabbit USA, LLC is a Florida limited liability company authorized to transact business in the State of Kentucky.  On information and belief, at all material times, Defendant Jack Rabbit USA, LLC does business, has offices, and/or maintains agents for the transaction of its customary business in Jefferson County, Kentucky.

30.     On information and belief, at all material times, Defendant Jack Rabbit USA, LLC does business as "Jack Rabbit Roadside Assistance."

31.     On information and belief, at all relevant times, Defendant Jack Rabbit USA, LLC was an employer under the FLSA.  The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee.  At all relevant times, Defendant Jack Rabbit USA, LLC had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Jack Rabbit USA, LLC is subject to liability under the FLSA.

32.     Defendant David Hain is an owner of Jack Rabbit Services, LLC and was at all
relevant times Plaintiff's employer as defined by the FLSA, 29 U.S.C. § 203(d).

33.     Under the FLSA, Defendant David Hain is an employer.  The FLSA defines
"employer" as any person who acts directly or indirectly in the interest of an employer in relation
to an employee.  Defendant David Hain is an owner of Jack Rabbit Services, LLC.  At all
relevant times, Defendant David Hain had the authority to hire and fire employees, supervised
and controlled work schedules or the conditions of employment, determined the rate and method
of payment, and maintained employment records in connection with Plaintiffs' employment with
Defendants.  As a person who acted in the interest of Defendants in relation to the company's
employees, Defendant David Hain is subject to individual liability under the FLSA.

34.     On information and belief, Defendant Theodore Kaufman is an owner of Jack
Rabbit USA, LLC and was at all relevant times Plaintiff's employer as defined by the FLSA, 29
U.S.C. § 203(d).

35.     On information and belief, under the FLSA, Defendant Theodore Kaufman is an
employer.  The FLSA defines "employer" as any person who acts directly or indirectly in the
interest of an employer in relation to an employee.  Defendant Theodore Kaufman is an owner of
Jack Rabbit USA, LLC.  At all relevant times, Defendant Theodore Kaufman had the authority to
hire and fire employees, supervised and controlled work schedules or the conditions of
employment, determined the rate and method of payment, and maintained employment records
in connection with Plaintiffs' employment with Defendants.  As a person who acted in the
interest of Defendants in relation to the company's employees, Defendant Theodore Kaufman is
subject to individual liability under the FLSA.

36.     At all material times, Defendants Jack Rabbit Services, LLC; Jack Rabbit USA, LLC; David Hain; and Theodore Kaufman are Plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

37.     At all material times, Defendants Jack Rabbit Services, LLC; Jack Rabbit USA, LLC; David Hain; and Theodore Kaufman are Plaintiffs' "employer" as defined by Kentucky Revised Statutes § 337.010, *et seq.*

38.     At all material times, Defendants Jack Rabbit Services, LLC; Jack Rabbit USA, LLC; David Hain; and Theodore Kaufman are Plaintiffs' "employer" as defined by Ohio Revised Code § 4111, *et seq.*

39.     Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiffs' work and wages at all relevant times.

40.     At all material times, Defendants have operated as a "single enterprise" within the meaning of Section 203(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities through unified operation and common control for a common business purpose; namely, the operation of a roadside assistance company operating under the name "Jack Rabbit Roadside Assistance."

41.     At all material times: (1) Defendants were not completely disassociated with respect to the employment of Plaintiffs; and (2) Defendants were under common control.  In any event, at all relevant times, all Defendants were joint employers under the FLSA.

42.     Defendants are engaged in related activities, *i.e.* all activities which are necessary to the operation and maintenance of the aforementioned restaurants.

-8-

43.    Defendants constitute a unified operation because they have organized the performance of their related activities so that they are an organized business system, which is an economic unit directed to the accomplishment of a common business purpose.

44.    Plaintiffs, in their work for Defendants, weer employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

45.    At all relevant times, Plaintiffs, in their work for Defendants, were engaged in commerce or the production of goods for commerce.

46.    At all relevant times, Plaintiffs, in their work for Defendants, were engaged in interstate commerce.

47.    Plaintiffs, in their work for Defendants, regularly handled goods produced or transported in interstate commerce.

## **NATURE OF THE CLAIM**

48.    Defendants do business as Jack Rabbit Roadside Assistance and provide roadside assistance services to customers.  These services include tire changes, jump starts, fuel delivery, and lockout services.

49.    Plaintiff Hammond was hired by Defendants and worked for Defendants as a roadside assistance technician from approximately August 2018 through approximately February 2019.

50.    At all relevant times, in his work for Defendants, Plaintiff Hammond worked as a roadside assistance technician, performing roadside assistance work-related manual labor, such as changing tires, jump starting cars, unlocking car doors, and delivering fuel.

51.    Defendants, in their sole discretion, agreed to compensate Plaintiff Hammond at a rate of $12 per service jobs/runs within his standard geographic coverage area; $6 for "gone on

arrival jobs;" and $12 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside Plaintiff Hammond's standard geographic coverage area.   Plaintiff Hammond was compensated by Defendants in this manner, regardless of how many hours he worked in a given workweek.

52.     Plaintiff Hammond, in his work for Defendants, was required to be "on call" seven days per week, and 24 hours per day.  In being "on call," Plaintiff Hammond was required to be within 25 minutes of his assigned route for any given call.

53.     Rather than classify Plaintiff Hammond as an employee, Defendants classified him as an independent contractor.

54.     Plaintiff Anderson was hired by Defendants and worked for Defendants as a roadside assistance technician from approximately November 2013 through approximately June 2019.

55.     At all relevant times, in his work for Defendants, Plaintiff Anderson worked as a roadside assistance technician, performing roadside assistance work-related manual labor, such as changing tires, jump starting cars, unlocking car doors, and delivering fuel.

56.     Defendants, in their sole discretion, agreed to compensate Plaintiff Hammond at a rate of $12 per service jobs/runs within his standard geographic coverage area; $6 for "gone on arrival jobs;" and $12 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside Plaintiff Hammond's standard geographic coverage area.   Plaintiff Hammond was compensated by Defendants in this manner, regardless of how many hours he worked in a given workweek.

57.     Defendants, in their sole discretion, agreed to compensate Plaintiff Anderson at a rate of $12 per service jobs/runs within his standard geographic coverage area; $6 for "gone on

-10-

arrival jobs;" and \$12 "plus \$1.00 per mile for each mile traveled" for service jobs/runs located outside Plaintiff Anderson's standard geographic coverage area.    Plaintiff Anderson was compensated by Defendants in this manner, regardless of how many hours he worked in a given workweek.

58.    Plaintiff Anderson, in his work for Defendants, was required to be "on call" seven days per week, and 24 hours per day.  In being "on call," Plaintiff Anderson was required to be within 25 minutes of his assigned route for any given call.

59.    Rather than classify Plaintiff Anderson as an employee, Defendants classified him as an independent contractor.

60.    On information and belief, Defendants serve 50 markets across the United States including, but not limited to, locations in Alabama, Arkansas, California, Florida, Indiana, Kansas, Kentucky, Louisiana, Maryland, Mississippi, North Carolina, New York, Ohio, South Carolina, Texas, Virginia, and West Virginia.

61.    As a matter of common policy and practice, Defendants misclassify all of their roadside assistance technicians as independent contractors.

62.    Consistent with this common policy and practice, Plaintiffs and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors.

63.    As a result of Defendants' common misclassification policy, Defendants have not paid a minimum wage or overtime pay to Plaintiffs and others similarly situated.

64.    Specifically, Defendants required Plaintiffs and others similarly situated to sign illegal and voice "Independent Contractor Agreements" pursuant to which Plaintiffs and others similarly situated were not paid an hourly wage equal to the applicable minimum wage, were not

-11-

paid overtime compensation at a rate of one and one-half times their regular rates, and were subject to improper pay reductions through "damage" deductions.

65.     Pursuant to Plaintiffs' Independent Contractor Agreement, Plaintiff and others similarly situated were paid only the following amounts: $12 per service jobs/runs within their standard geographic coverage area; $6 for "gone on arrival jobs;" and $12 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside of their standard geographic coverage areas.   Plaintiffs and others similarly situated were compensated by Defendants in this manner, regardless of how many hours they worked in a given workweek.

66.     Additionally, under the Independent Contractor Agreement, Plaintiffs and others similarly situated were held "solely responsible for all damages/injuries cause by him to the customer or his/her vehicle while performing service."

67.     Pursuant to Defendants' policies, Plaintiffs and others similarly situated routinely suffered improper pay deductions to account for: (1) alleged damage to customer vehicles; (2) alleged mileage miscalculations; and (3) alleged insurer refusal to pay mileage invoices exceeding certain distances.

68.     Plaintiffs and others similarly situated had no control over these improper deductions.

69.     Defendants required Plaintiffs and others similarly situated to be on-call 24 hours per day, seven days per week.

70.     In addition to "on call" time, Plaintiffs and others similarly situated routinely worked in excess of 70 hours per week.

-12-

71.     The FLSA applied to Plaintiffs and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA apply to Plaintiffs and those similarly situated.

72.     Upon information and belief, Defendants employed hundreds of roadside assistance technicians throughout the relevant time period without paying a minimum wage or overtime pay, while subjecting them to improper and unlawful pay deductions, and while denying them the rights and benefits due an employee.

73.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiffs and similarly situated individuals.

74.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiffs were the same as those applied to other putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members who also worked as roadside assistance technicians for Defendants.

75.     Plaintiffs and the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors, failing to pay them a minimum wage and overtime pay, and subjecting them to improper and unlawful deductions.

76.     Because Defendants failed to pay their employees proper wages, the putative Collective Members', Kentucky Class Action Members', and Ohio Class Action Members' income consisted solely of the following amounts: $12 per service jobs/runs within their standard

-13-

geographic coverage area; $6 for "gone on arrival jobs;" and $12 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside of their standard geographic coverage areas.

77.     Defendants' misclassification of Plaintiff and other putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members as independent contractors was specifically intended to enhance Defendants' profit margins at the expense of the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members as follows: (1) willfully failing to pay roadside assistance technicians the minimum wage in violation of the FLSA; KRS §§ 337.050, 337.275, and 337.285; and ORC § 4111; (2) willfully suffering and permitting Plaintiffs and the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members to work in excess of 40 hours in a given workweek without paying overtime compensation at a rate of one and one-half times their regular rates; (3) improperly deducting pay to the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members through unlawful deductions; and (5) adopting and implementing employment policies that violate the FLSA; KRS §§ 337.050, 337.275, and 337.285; and ORC § 4111.

78.     Defendants' misclassification of Plaintiffs and those similarly situated was willful.

79.     Defendants knew or should have known that it was improper to classify Plaintiffs and the putative Collective Members, Kentucky Class Action Members, and Ohio Class Action Members as independent contractors.

80.     Workers in the putative Collective and Classes cannot "elect" to be treated as employees or independent contractors. Nor can workers in the putative Collective or Classes agree to be paid less than the applicable minimum wage. Despite this, Defendants unfairly,

unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative
Collective and Classes to waive their statutory rights and elect to be treated as independent
contractors.

81.    Any contract which attempts to have workers in the putative Collective and
Classes waive, limit, or abridge their statutory rights to be treated as an employee under the
FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and
contrary to public policy.

82.    The determining factor as to whether Plaintiffs and those similarly situated are
employees or independent contractors under the FLSA is not the workers' elections, subjective
intent, or any contract. Rather, the test for determining whether an individual is an "employee"
under the FLSA is the economic reality test. *See Rutherford Food Corp. v. McComb*, 331 U.S.
722, 727 (1947). Under the economic reality test, employee status turns on whether the
individual is, as a matter of economic reality, in business for herself and truly independent, or,
rather, is economically dependent upon finding employment in others.

83.    Under the applicable test, court use the following factors to determine economic
dependence and employment status: (1) the degree of control exercised by the alleged employer;
(2) the relative investments of the alleged employer and employee; (3) the degree to which the
employee's opportunity for profit and loss is determine by the employer; (4) the skill and
initiative required in performing the job; (5) the permanency of the relationship; and (6) the
degree to which the alleged employee's tasks are integral to the employer's business.

84.    The totality of circumstances surrounding the employment relationship between
Defendants and the putative Collective and Classes establishes economic dependence by the
putative Collective and Classes on Defendants and employee status. Here, Plaintiffs and all

individuals similarly situated are not in business for themselves and truly independent, but rather are economically dependent upon finding employment in Defendants. The putative Collective and Classes are not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the putative Collective and Classes are the basis for Defendants' business. Defendants obtain the customers who seek out roadside assistance, and Defendants provide the workers who conduct the roadside assistance on behalf of Defendants. Defendants retain pervasive control over the business operation as a whole, and putative Collective and Classes.

### Degree of Control Exercised by Defendants

85.     Plaintiffs and the other members of the putative Class do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the other Class members.

86.     Plaintiffs and Class members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

87.     Defendants exercise the following significant control over the work conditions of Plaintiffs and others similarly situated:

> a.     Defendants require Plaintiffs and putative Collective and Classes to be on call twenty-four hours per day, seven days per week;
>
> b.     As a result of "on call" time, Defendants require Plaintiff and putative Collective and Classes to routinely work in excess of 70 hours per week;

-16-

c.    Defendants require Plaintiffs and the putative Collective and Classes to reach the destination of each service run/job within twenty-five minutes of receiving the assignment;

d.    Defendants pay Plaintiffs and the putative Collective and Classes only the following amounts; $12.00 for service jobs/runs within Plaintiffs' standard geographic coverage area; $6.00 for "gone on arrival" jobs; and $12.00 "plus $1.00 per mile for each mile traveled" for service jobs/runs located outside Plaintiffs' standard geographic coverage areas;

e.    Defendants hold Plaintiffs and the putative Collective and Classes "solely responsible for all damages/injuries caused by him to the customer or his/her vehicle while performing service…";

f.    Defendants subject Plaintiffs and the putative Collective and Classes to improper pay deductions to account for: (1) alleged damage to customer vehicles; (2) alleged mileage miscalculations; and (3) alleged insurer refusal to pay mileage invoices exceeding certain distances;

g.    Defendants direct Plaintiffs and the putative Collective and Classes with respect to which service jobs/runs to perform and what types of service to provide;

h.    Defendants require Plaintiffs and the putative Collective and Classes to wear Defendants' uniform;

i.    Defendants require Plaintiffs and the putative Collective and Classes to maintain signage on their vehicles that bear Defendants' name and logo;

j.    Defendants require Plaintiffs and the putative Collective and Classes to use forms and invoices Defendants provided;

k.    Defendants determined the tools and equipment Plaintiffs and the putative Collective and Classes have to use; and

l.    Defendants require Plaintiffs and the putative Collective and Classes to deliver to Defendants all invoices and customer service reports within the same day of each service job/run;

**Facts Establishing No Skill or Initiative of a Person in Business for Themselves**

88.    Plaintiffs, like all members of the putative Collective and Classes, do not exercise the skill and initiative of a person in business for oneself;

89.    Plaintiffs and the putative Collective and Classes are not required to have any specialized or unusual skills to perform their jobs.  The sills used in performing roadside assistance are commensurate with those exercised by ordinary people.

90.    Plaintiffs, like all members of the putative Collective and Classes, do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

91.    Plaintiffs and the putative Collective and Classes have no control over customers, nor do they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

92.    Defendants do not permit Plaintiffs and the putative Collective and Classes to hire or subcontract other qualified individuals to provide additional roadside assistance to customers,

thereby increasing their revenue, as an independent contractor in business for himself would have the authority to do.

### Facts Establishing Relative Investment

93.    Plaintiffs' and the putative Collective's and Classes' relative investment is minor when compared to the investment made by Defendants.

94.    Plaintiffs and the putative Collective and Classes make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belong to Defendants.

95.    Plaintiffs' and the putative Collective's and Classes' investment is limited to fuel and amounts paid to Defendants for signage, uniforms, and tools. Absent Defendants' investment and provision of the business, the roadside assistance technicians would not earn anything.

### Facts Establishing Opportunity for Profit and Loss

96.    Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff. Defendants provide all necessary capital to open and operate the business.

97.    Neither Plaintiffs nor the putative Collective and Classes have responsibility for any aspect of Defendants' ongoing business risk.

### Facts Establishing Permanency

98.    Plaintiff Sean Hammond worked for Defendants as a roadside assistance technician from approximately August 2018 through approximately February 2019 in Defendants' Louisville, Kentucky and Cincinnati, Ohio coverage areas.

99.     Plaintiff Nicholas Anderson worked for Defendants as a roadside assistance technician from approximately 2013 through approximately June 2019 in Defendants' San Diego, California; Louisville, Kentucky; and Cincinnati, Ohio coverage areas.

### Fact Establishing Members of the Putative Collective and Classes Are an Integral Part of Defendants' Business

100.     Plaintiffs and the putative Collective and Classes are critical to Defendants' success.  Defendants' operation in wholly dependent on the roadside assistance services that Plaintiffs and the putative Collective and Classes provide for customers.

101.     The primary "product" or "good" Defendants are in business to sell consists of roadside assistance services provided by members of the putative Collective and Classes.

102.     Members of the putative Collective and Classes, like Plaintiffs, are economically dependent on Defendants and subject to significant control by Defendants.

### Facts Establishing that Defendants' Acts Were Willful

103.     All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

104.     Defendants were aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiffs and Members of the putative Collective and Classes were misclassified as independent contractors.

105.     Roadside assistance technicians working under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors– in other FLSA cases.

106.    Defendants themselves have been party Defendants in previous litigation in which they were sued by roadside assistance technicians under the FLSA asserting substantially similar allegations to those contained herein.

107.    Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify roadside assistance technicians like Plaintiff and similarly situated individuals, failed to pay them minimum wage in violation of the FLSA, knowingly suffered or permitted them to work in excess of 40 hours during a workweek without paying them overtime compensation at a rate of one and one-half times their regular rate, and improperly reduced their pay through unlawful deductions.  Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## INJURY AND DAMAGE

108.    Plaintiff and all Members of the putative Collective and Classes suffered harm, injury, and damages, including financial loss, as a result of Defendants' conduct complained of herein.

109.    Plaintiff and all Members of the putative Collective and Classes were entitled to a minimum wage and overtime pay for their work performed for Defendants.  Further, Defendants were not allowed to make improper and unlawful deductions from Plaintiffs' and the Members' of the putative Collective and Classes pay.  By failing to pay Plaintiffs and the Members of the putative Collective and Classes a minimum wage and overtime pay and interfering with their right to retain all of their earnings, Defendants injured Plaintiffs and the Members of the putative Collective and Classes and caused them financial loss, harm, injury, and damage.

## FLSA COLLECTIVE ACTION ALLEGATIONS

110.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

111.    Plaintiffs bring the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

112.    Plaintiffs assert those claims on behalf of themselves, and on behalf of all similarly situated roadside assistance technicians of Defendants, who were not paid all minimum wage and overtime compensation required by the FLSA during the relevant time period as a result of Defendants' compensation policies and practices.

113.    Plaintiffs seek to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

> **All roadside assistance technicians (or individuals with other similar job duties or titles) who worked for Defendants and were misclassified as independent contractors at any time during the past three years.**

114.    The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of the Act. 29 U.S.C. § 255.  As alleged above, Plaintiffs and similarly situated roadside assistance technicians' claims arise out of Defendants' willful violations of the FLSA.  Accordingly, the Court should require appropriate notice of this action be given to all tipped employees employed by Defendants within three years from the filing of this Complaint.

115.    Upon information and belief, Defendants have employed more than one thousand (1,000) roadside assistance technicians during the period relevant to this action.

116.    The identities of these individuals, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiffs, joinder of each member is not practicable.

117.    Because these similarly situated tipped employees are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

118.    Collective adjudication is appropriate in this case because the individuals whom Plaintiffs wish to notify of this action have been employed in positions similar to Plaintiffs; have performed work similar to Plaintiffs; and have been subject to compensation practices similar to those to which Plaintiffs have been subjected, including unlawful misclassification as independent contractors and failure to pay the applicable minimum wage and overtime rates as required by the FLSA.

## KENTUCKY CLASS ACTION ALLEGATIONS

119.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

120.    Plaintiff Nicholas Anderson brings his Kentucky wage claims as a Rule 23 class action on behalf of the following Kentucky Class Action Members:

> **All roadside assistance technicians (or individuals with other similar job duties or titles) who worked for Defendants in Kentucky and were misclassified as independent contractors at any time during the past three years.**

121.    Numerosity.  The number of Kentucky Class Action Members is believed to be over two hundred.  This volume makes bringing the claims of each individual Kentucky Class Action Member before this Court impracticable.  Likewise, joining each individual Kentucky Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Kentucky Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means

of resolving these claims. To require individual actions would prejudice the Kentucky Class Action Members and Defendants.

122. <u>Typicality</u>. Plaintiff Nicholas Anderson's Kentucky claims are typical of the Kentucky Class Action Members because like the Kentucky Class Action Members, Plaintiff Nicholas Anderson was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Kentucky Class Action Members. Defendants regularly required Plaintiff Nicholas Anderson and the Kentucky Class Action Members to work in excess of 40 hours in a given workweek without paying them overtime. Defendants regularly required Plaintiff Nicholas Anderson and the Kentucky Class Action Members to work seven days per week in a given workweek without paying them overtime for the seventh day. Defendants regularly and improperly deducted amounts from Plaintiff Nicholas Anderson's and the Kentucky Class Action Members' pay. Defendants misclassified Plaintiff Nicholas Anderson and the Kentucky Class Action Members as independent contractors. This was commonly, though not exclusively, done in order to prevent Plaintiff Nicholas Anderson and the Kentucky Class Action Members from being paid a minimum wage for all hours worked and overtime for all hours worked in excess of 40 in a given workweek. As a result, Defendants failed to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members both minimum wage and overtime for all hours worked.

123. As a result of such policy and practice by Defendants, Defendants violated the minimum and overtime wage provisions of Kentucky Revised Statutes §§ 337.050, 337.275, and 337.285.

124. <u>Adequacy</u>. Plaintiff Nicholas Anderson is a representative party who will fairly and adequately protect the interests of the Kentucky Class Action Members because it is in his

-24-

interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Kentucky law. Plaintiff Nicholas Anderson has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff Nicholas Anderson does not have any interest that may be contrary to or in conflict with the claims of the Kentucky Class Action Members she seeks to represent.

125.    Commonality. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

        a.    The number of hours worked by Plaintiff Nicholas Anderson and the Kentucky Class Action Members;

        b.    The amounts paid to Plaintiff Nicholas Anderson and the Kentucky Class Action Members;

        c.    The degree of control Defendants exerted over Plaintiff Nicholas Anderson and the Kentucky Class Action Members;

        d.    The relative investments of Defendants and Plaintiff Nicholas Anderson and the Kentucky Class Action Members;

        e.    The degree to which Plaintiff Nicholas Anderson's and the Kentucky Class Action Members' opportunity for profit and loss was determined by Defendants;

        f.    The skill and initiative required in performing the job;

        g.    The permanency of the relationship; and

        h.    The degree to which Plaintiff Nicholas Anderson's and the Kentucky Class Action Members' tasks are integral to Defendants' business.

126.    Common issues of law include, but are not limited to:

-25-

      a.     Whether Defendants paid all minimum wages due and owing to Plaintiff Nicholas Anderson and the Kentucky Class Action Members;

      b.     Whether Defendants paid overtime wages due and owing to Plaintiff Nicholas Anderson and the Kentucky Class Action Members for all hours worked in excess of 40 in a given workweek;

      c.     Whether Defendants improperly misclassified Plaintiff Nicholas Anderson and the Kentucky Class Action Members as independent contractors;

      d.     Whether Plaintiff Nicholas Anderson and the Kentucky Class Action Members are entitled to compensatory damages;

      e.     The proper measure of damages sustained by Plaintiff Nicholas Anderson and the Kentucky Class Action Members; and

      f.     Whether Defendants' actions were "willful."

127.    Superiority. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any of the Kentucky Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system. Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits. Prosecution of separate actions by individual Kentucky Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

128.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge. By concentrating this litigation in one

forum, judicial economy and parity among the claims of individual Kentucky Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Kentucky Class Action Members are readily identifiable from Defendants' records.

129.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; (3) the burden is on each Defendant to accurately record hours worked by employees; and (4) the burden is on each Defendant to prove it properly imposed the tip credit upon its employees.

130.    Ultimately, a class action is a superior forum to resolve the Kentucky state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Kentucky Class Action Members according to applicable Kentucky laws.

131.    Nature of Notice to be Proposed.  As to the Rule 23 Kentucky Class Action Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Kentucky Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## OHIO CLASS ACTION ALLEGATIONS

132.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

133.    Plaintiff Sean Hammond brings his Ohio wage claims as a Rule 23 class action on behalf of the following Ohio Class Action Members:

-27-

> **All roadside assistance technicians (or individuals with other similar job duties or titles) who worked for Defendants in Ohio and were misclassified as independent contractors at any time during the past three years.**

134.   Numerosity.  The number of Ohio Class Action Members is believed to be over two hundred.  This volume makes bringing the claims of each individual Ohio Class Action Member before this Court impracticable.  Likewise, joining each individual Ohio Class Action Member as a plaintiff in this action is impracticable.  Furthermore, the identity of the Ohio Class Action Members will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Ohio Class Action Members and Defendants.

135.   Typicality.  Plaintiff Sean Hammond's Ohio claims are typical of the Ohio Class Action Members because like the Ohio Class Action Members, Plaintiff Sean Hammond was subject to Defendants' uniform policies and practices and was compensated in the same manner as the other Ohio Class Action Members.  Defendants regularly required Plaintiff Sean Hammond and the Ohio Class Action Members to work in excess of 40 hours in a given workweek without paying them overtime.  Defendants regularly required Plaintiff Sean Hammond and the Ohio Class Action Members to work seven days per week in a given workweek without paying them overtime for the seventh day.  Defendants regularly and improperly deducted amounts from Plaintiff Sean Hammond's and the Ohio Class Action Members' pay.  Defendants misclassified Plaintiff Sean Hammond and the Ohio Class Action Members as independent contractors.  This was commonly, though not exclusively, done in order to prevent Plaintiff Sean Hammond and the Ohio Class Action Members from being paid a minimum wage for all hours worked and overtime for all hours worked in excess of 40 in a given

workweek.  As a result, Defendants failed to pay Plaintiff Sean Hammond and the Ohio Class Action Members both minimum wage and overtime for all hours worked.

136.    As a result of such policy and practice by Defendants, Defendants violated the minimum and overtime wage provisions of Ohio Revised Code § 4111.

137.    Adequacy.  Plaintiff Sean Hammond is a representative party who will fairly and adequately protect the interests of the Ohio Class Action Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Ohio law.  Plaintiff Sean Hammond has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff Sean Hammond does not have any interest that may be contrary to or in conflict with the claims of the Ohio Class Action Members she seeks to represent.

138.    Commonality. Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

> i.    The number of hours worked by Plaintiff Sean Hammond and the Ohio Class Action Members;
>
> j.    The amounts paid to Plaintiff Sean Hammond and the Ohio Class Action Members;
>
> k.    The degree of control Defendants exerted over Plaintiff Sean Hammond and the Ohio Class Action Members;
>
> l.    The relative investments of Defendants and Plaintiff Sean Hammond and the Ohio Class Action Members;
>
> m.    The degree to which Plaintiff Sean Hammond's and the Ohio Class Action Members' opportunity for profit and loss was determined by Defendants;

-29-

n.    The skill and initiative required in performing the job;

o.    The permanency of the relationship; and

p.    The degree to which Plaintiff Sean Hammond's and the Ohio Class Action Members' tasks are integral to Defendants' business.

139.    Common issues of law include, but are not limited to:

g.    Whether Defendants paid all minimum wages due and owing to Sean Hammond and the Ohio Class Action Members;

h.    Whether Defendants paid overtime wages due and owing to Sean Hammond and the Ohio Class Action Members for all hours worked in excess of 40 in a given workweek;

i.    Whether Defendants improperly misclassified Plaintiff Sean Hammond and the Ohio Class Action Members as independent contractors;

j.    Whether Sean Hammond and the Ohio Class Action Members are entitled to compensatory damages;

k.    The proper measure of damages sustained by Sean Hammond and the Ohio Class Action Members; and

l.    Whether Defendants' actions were "willful."

140.    Superiority. A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any of the Ohio Class Action Members could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the system. Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits. Prosecution of separate actions

by individual Ohio Class Action Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

141.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Ohio Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Ohio Class Action Members are readily identifiable from Defendants' records.

142.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; (3) the burden is on each Defendant to accurately record hours worked by employees; and (4) the burden is on each Defendant to prove it properly imposed the tip credit upon its employees.

143.    Ultimately, a class action is a superior forum to resolve the Kentucky state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Ohio Class Action Members according to applicable Ohio laws.

144.    <u>Nature of Notice to be Proposed.</u> As to the Rule 23 Ohio Class Action Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice." Notice of the pendency and resolution of the action can be provided to the Ohio Class Action Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

## COUNT ONE: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY MINIMUM WAGE

**(Against All Defendants)**

145.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

146.    Defendants willfully failed or refused to pay Plaintiffs and the Collective Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

147.    As a result, Defendants failed to compensate Plaintiffs and the Collective Members at least the applicable minimum wage rate for all hours worked.

148.    Defendants' practice of willfully failing or refusing to pay Plaintiffs and the Collective Members at the required minimum wage rate violates the FLSA, 29 U.S.C. § 206(a).

149.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiffs and the Collective Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiffs and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

150.    Plaintiffs and the Collective Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment

interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

**COUNT TWO: FAIR LABOR STANDARDS ACT**
**IMPROPER PAY DEDUCTIONS**
**(Against All Defendants)**

151.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

152.    Defendants engaged in the regular policy and practice of subjecting Plaintiffs and the Collective Members to unlawful pay deductions for, among other things, alleged damage to customer vehicles, alleged mileage miscalculations, alleged insurer refusal to pay mileage invoices exceeding certain distances, uniforms, and car magnets and promotional materials.

153.    Such policy and practice by Defendants resulted in Plaintiffs' and the Collective Members' wages below the applicable minimum wage, in violation of the FLSA, 29 U.S.C. § 206(a).

154.    Defendants therefore failed and/or refused to pay Plaintiffs and the Collective Members the full minimum wage according to the provisions of the FLSA for each and every workweek that Plaintiff and the Collective Members worked for Defendants, for the duration of their employment, in violation of 29 U.S.C. § 206(a).

155.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Member the full minimum wage over the course of their employment would violate federal law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff's and the Collective Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

156.    Plaintiffs and the Collective Members are therefore entitled to compensation for the full minimum wage at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorneys' fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, on behalf of herself and all other similarly situated persons, respectfully request that this Court grant relief in Plaintiffs' and the Collective Members' favor, and against Defendants for compensation for unpaid minimum and overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT THREE: FAIR LABOR STANDARDS ACT
## FAILURE TO PAY OVERTIME
### (Against All Defendants)

157.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

158.    Defendants willfully failed or refused to pay Plaintiffs and the Collective Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

159.    As a result, Defendants failed to compensate Plaintiffs and the Collective Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

160.    Defendants' practice of willfully failing or refusing to pay Plaintiffs and the Collective Members at the required overtime wage rate violates the FLSA, 29 U.S.C. § 207(a).

161.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiffs and the Collective Members the proper overtime rate would violate

federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiffs and the Collective Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

162.    Plaintiffs and the Collective Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

### COUNT FOUR: KENTUCKY REVISED STAUTES § 337.275
### FAILURE TO PAY MINIMUM WAGE
### (Against All Defendants)

163.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

164.    Defendants willfully failed or refused to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members minimum wage for all hours worked in a given workweek throughout the duration of their employment.

165.    As a result, Defendants failed to compensate Plaintiff Nicholas Anderson and the Kentucky Class Action Members at least the applicable minimum wage rate for all hours worked.

166.    Defendants' practice of willfully failing or refusing to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members at the required minimum wage rate violates the minimum wage provisions of KRS § 337.275.

167.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff Nicholas Anderson's and the Kentucky Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

168.    Plaintiff Nicholas Anderson and the Kentucky Class Action Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT FIVE: KENTUCKY REVISED STAUTES § 337.285
## FAILURE TO PAY OVERTIME FOR HOURS IN EXCESS OF 40
### (Against All Defendants)

169.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

170.    Defendants willfully failed or refused to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

171.    As a result, Defendants failed to compensate Plaintiff Nicholas Anderson and the Kentucky Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

172.    Defendants' practice of willfully failing or refusing to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members at the required overtime wage rate violates Kentucky Revised Statutes § 337.285.

173.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff Nicholas Anderson's and the Kentucky Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

174.    Plaintiff Nicholas Anderson and the Kentucky Class Action Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment

interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## COUNT FIVE: KENTUCKY REVISED STAUTES § 337.050
### FAILURE TO PAY OVERTIME FOR SEVENTH DAY WORKED
### (Against All Defendants)

175.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

176.    Defendants regularly required Plaintiff Nicholas Anderson and the Kentucky Class Action Members to work seven days per week in a given workweek without paying them overtime for the seventh day.

177.    Defendants willfully failed or refused to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members the applicable overtime wage for all hours worked on the seventh consecutive workday they worked in a given workweek.

178.    As a result, Defendants failed to compensate Plaintiff Nicholas Anderson and the Kentucky Class Action Members at least the applicable overtime wage rate for all hours worked on the seventh consecutive workday they worked in a given workweek.

179.    Defendants' practice of willfully failing or refusing to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members at the required overtime wage rate violates Kentucky Revised Statutes § 337.050.

180.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff Nicholas Anderson and the Kentucky Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiffs and the Kentucky Class Action Members employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

181.    Plaintiff Nicholas Anderson and the Kentucky Class Action Members are

therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven

at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable

attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, individually, and on

behalf of all roadside assistance technicians similarly situated, respectfully request that the Court

grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime

wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment

interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional

relief this Court deems just and proper.

## COUNT SIX: OHIO REVISED CODE § 4111
## FAILURE TO PAY MINIMUM WAGE
### (Against All Defendants)

182.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

183.    Defendants willfully failed or refused to pay Plaintiff Sean Hammond and the

Ohio Class Action Members minimum wage for all hours worked in a given workweek

throughout the duration of their employment.

184.    As a result, Defendants failed to compensate Plaintiff Sean Hammond and the

Ohio Class Action Members at least the applicable minimum wage rate for all hours worked.

185.    Defendants' practice of willfully failing or refusing to pay Plaintiff Sean

Hammond and the Ohio Class Action Members at the required minimum wage rate violates the

minimum wage provisions of ORC § 4111.

186.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff Sean Hammond and the Ohio Class Action Members the proper minimum wage rate would violate federal and state law, and Defendants were aware of the FLSA minimum wage requirements during Plaintiff Sean Hammond's and the Ohio Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

187.    Plaintiff Sean Hammond and the Ohio Class Action Members are therefore entitled to compensation for the unpaid minimum wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

<u>**COUNT SEVEN: OHIO REVISED CODE § 4111**</u>
<u>**FAILURE TO PAY OVERTIME**</u>
**(Against All Defendants)**

188.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

189.    Defendants willfully failed or refused to pay Plaintiff Sean Hammond and the Ohio Class Action Members the applicable overtime wage for all hours worked in excess of 40 in a given workweek throughout the duration of their employment.

190. As a result, Defendants failed to compensate Plaintiff Sean Hammond and the Ohio Class Action Members at least the applicable overtime wage rate for all hours worked in excess of 40 in a given workweek.

191. Defendants' practice of willfully failing or refusing to pay Plaintiff Sean Hammond and the Ohio Class Action Members at the required overtime wage rate violates the overtime provisions of ORC § 4111.

192. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff Sean Hammond and the Ohio Class Action Members the proper overtime rate would violate federal and state law, and Defendants were aware of the FLSA overtime requirements during Plaintiff Sean Hammond's and the Ohio Class Action Members' employment. As such, Defendants' conduct constitutes a willful violation of the FLSA.

193. Plaintiff Sean Hammond and the Ohio Class Action Members are therefore entitled to compensation for the unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

**WHEREFORE**, Plaintiffs, Sean Hammond and Nicholas Anderson, individually, and on behalf of all roadside assistance technicians similarly situated, respectfully request that the Court grant relief in Plaintiff's favor, and against Defendants for compensation for unpaid overtime wages, plus an additional equal amount as liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and disbursements of this action, and any additional relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 25th day of November, 2020.

BENDAU & BENDAU PLLC

By: /s/ *Clifford P. Bendau, II*
Clifford P. Bendau, II (OH No. 0089601)
BENDAU & BENDAU PLLC
P.O. Box 97066
Phoenix, Arizona 85060
Telephone AZ: (480) 382-5176
Email: cliffordbendau@bendaulaw.com
       chris@bendaulaw.com

THE LAW OFFICES OF SIMON & SIMON

By: /s/ *James L. Simon*
James L. Simon (OH No. 0089483)
6000 Freedom Square Dr.
Independence, OH 44131
Telephone: (216) 525-8890
Facsimile: (216) 642-5814
Email: jameslsimonlaw@yahoo.com